



JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

MAR 22 1972

PATRICIA D. HOWARD
CLERK OF THE PANEL

3/22/72

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE YARN PROCESSING        )
PATENT VALIDITY LITIGATION )          DOCKET NO. 82

OPINION AND ORDER
————————————

BEFORE ALFRED P. MURRAH, CHAIRMAN AND JOHN MINOR WISDOM,
EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH
S. LORD, III, AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

————————————

PER CURIAM

### Preliminary Proceedings Before the Panel

The question whether to transfer this unusually
important litigation was first presented to the Panel on
a motion filed by Celanese Corporation ("Celanese" herein-
after) for an order transferring most of these thirty-five
actions in 4 districts[1] to the Southern District of Florida
for pretrial proceedings.  Without explanation of the
reasons, this motion was withdrawn by Celanese.  Because
of the apparent importance of the question of transfer to

———————————
[1]  The motion did not include <u>Leesona Corp. v. Custom Industries,
Inc.</u>, M.D.N.C., Civil Action No. 6-236-6-70 and <u>Leesona Corp. v.
Duplan Corp.</u>, E.D.N.Y., Civil Action No. 70-C-1087.

-2-

the parties, witnesses and to the administration of justice

an Order to Show Cause why the thirty-five actions, listed

in Schedule A hereof, should not be transferred to a single

district for coordinated or consolidated pretrial proceed-

ings, under § 1407, Title 28, U.S.C., was issued by the

Panel.  Pursuant to the Order to Show Cause the questions

whether and where to transfer were briefed and argued before

the Panel.

There was agreement among most and perhaps all the

affected parties that the actions should be transferred

under § 1407 to a single transferee district for pretrial

proceedings, and indeed for trial of all actions triable in

the transferee district, because of original filing therein,

or prior or anticipated transfer thereto under § 1404(a),

Title 28, U.S.C.

## Multidistrict Nature of the Litigation

The litigation is multidistrict litigation within

the definition of § 1407.  It involves litigation pending in

four districts involving common questions of fact.  The

transfer of the litigation to a single district for con-

solidated or coordinated pretrial proceedings "will be for

the convenience of parties and witnesses and will promote

-3-

the just and efficient conduct of such actions."

### Unusual Nature of the Litigation and Patents Involved

The litigation is unusual, and its prompt disposition is urgent to commerce in the very important double knit yarn (sometimes "false twisting") industry, because it involves primarily the validity of 6 basic patents which presently dominate the double knit yarn industry.

The first 3 patents are usually referred to as the "single heater patents".[2]  These patents involve methods and equipment to impart a texture to raw yarn by thermal processing of the yarn in one stage of heat treatment.

The second 3 patents are usually referred to as the "double heater patents".[3]  These patents involve methods and equipment for processing the raw yarn in two sequential stages of heat treatment, the first of which corresponds to the process of the single heater patents.

Sometimes, but not always employed in addition to the

---

[2]/  Patent Nos. 2,803,105; 2,803,108; 2,803,109, which will expire on August 20, 1974.

[3]/  Patent Nos. 3,077,724; 3,091,912; 3,472,011, which are scheduled to expire in 1980.

-4-

single heater process and the double heater processes are the three "high speed spindle" patents.[4]

The inventors of five of the six single heater and double heater patents are Nicholas J. Stoddard and Warren A. Seem.[5]  Stoddard and Seem, along with two other individuals, formed a partnership known as The Permatwist Company ("Permatwist" hereinafter), to which they assigned their patents.  Permatwist subsequently assigned the five patents to the Leesona Corporation ("Leesona" hereinafter) which is owner of the three spindle patents.  Some of the parties to this litigation allege that Permatwist retained the right to share in royalties received from licensees under the five patents and was given a voice in the formulation of Leesona's patent licensing policies.

Leesona later assigned the two double heater patents held by it to a third corporation, Lex-Tex, Inc., a North Carolina corporation, whose only stockholders are alleged to be general counsel to Permatwist and one of Leesona's outside patent counsel.  Thereafter, the two double heater

_____

4/   Patent Nos. 2,791,086; 3,044,274; 3,134,218.

5/   The sixth patent, one of the double heater patents, is Patent No. 3,472,011, originally issued to Ernest Scragg & Sons, Ltd.

-5-

patents were reassigned to Lex-Tex, Ltd., a Florida corpora-
tion.  These assignments were also allegedly subject to
Permatwist's residual interest.  Lex-Tex, Ltd., later acquired
the third double heater patent and is engaged in the business
of licensing these three patents to producers of textured
yarn.  It, too, is alleged to be solely owned by general
counsel to Permatwist and patent counsel to Leesona.

The remaining parties to this litigation are mainly
producers of textured yarn who at one time operated as
licensees under the Leesona single heater patents and Lex-Tex
double heater patents and are now attacking the patents and
the licensing program.  Several other plaintiffs have only
recently begun to produce textured yarn and are seeking a
declaration of the invalidity of some of the patents.  Some,
but not all, of the single heater and double heater patent
licensees also employed the high speed spindle processes.

I.  Further Background of This Multidistrict Litigation

Leesona has been engaged in litigation over these
patents for some time.  That litigation has a long and
complicated procedural history, only part of which will be
summarized here.  The litigation began in August, 1969 when

-6-

Leesona's licensees under the single heater and high
speed spindle patents stopped royalty payments and
sought to terminate the license agreements.  The first
suit by a licensee, Kayser-Roth Corporation, was filed
shortly thereafter in the Eastern District of New York,
seeking a declaratory judgment of non-infringement of
the single heater patents.  Other suits were soon
filed in that district by other former licensees seeking
similar relief.  In June, 1970, all these actions were
consolidated for pretrial purposes, first before Judge
Dooling and upon his recusal before Judge Zavatt.

In the meantime, Leesona sued all of its licensees
in the state courts of Rhode Island in October, 1969,
seeking equitable relief including a construction of the
licensing agreements and a declaration of the validity of

-7-

the single heater patents.  The defendants removed the action to the United States District Court, where it was dismissed for lack of derivative jurisdiction.  <u>Leesona v. Concordia Mfg. Co.</u>, 312 F.Supp. 329 (D.R.I. 1970).  Leesona then filed a similar second suit, in the United States District Court for Rhode Island, requesting a declaration of the validity of the single heater  patents.

At this point, with actions pending in Rhode Island and New York and an additional related action filed in the Western  District of North Carolina, this Panel ordered the parties to show cause why all actions should not be transferred to a single district court for consolidated or coordinated pretrial proceedings under 28 U.S.C. § 1407. Shortly thereafter the Rhode Island district court transferred Leesona's action against a number of licensee defendants to the Eastern District of New York, pursuant to 28 U.S.C. § 1404(a), and stayed the Rhode Island action as to the few defendants whose cases could not be transferred under § 1404(a).  <u>Leesona Corp. v. Duplan  Corp.</u>, 317 F.Supp. 290 (D.R.I. 1970).  When a stay of proceedings pending disposition of the New York cases was also entered in the

-8-

North Carolina case, the Panel vacated its Order to Show
Cause. Since that time a number of additional related
actions have been filed in the Eastern District of Pennsylvania,
the Middle District of North Carolina and the Southern
District of Florida.

II. Actions Now Pending and Proceedings Therein

As noted above the twenty-four actions by former
licensees pending in the Eastern District of New York have
been consolidated for pretrial purposes.[6] An amended complaint
has been filed on behalf of all plaintiffs against Leesona,
seeking a declaratory judgment of the invalidity, non-
infringement and unenforceability of the three single heater
and three spindle patents. This amended complaint also
asserts a claim for relief under Sections 1 and 2 of the
Sherman Act, 15 U.S.C. §§ 1, 2, alleging a conspiracy by
Leesona and others to restrain and to monopolize interstate
trade and commerce in the sale of "false twisting" machinery
and processes. In the amended complaint Leesona is alleged

---

6/ These cases are now assigned to the Honorable Joseph C.
Zavatt of that district. The action transferred from Rhode
Island, Leesona Corp. v. Duplan Corp., E.D. N.Y., Civil
Action No. 70-C-1087, has not been consolidated with these
actions.

to have acted with certain foreign and domestic companies
and individuals to pool their "false twist" patents, to
cross-license illegally those patents and to leave Leesona
in control of the licensing of and royalties received
from the patents.  Lex-Tex is named as one of the co-
conspirators but has not been made a party defendant, for
reasons discussed hereinafter.  The five infringement
suits brought by it under one of the double heater patents
in the Southern District of Florida, mentioned hereinafter,
are alleged to be brought in furtherance of the alleged
conspiracy.[7]

The New York plaintiffs state that they have
spent a total of "250 man days" (not 250 days) in dis-
covery and have examined over 200,000 documents.  They
have taken one deposition, that of Leesona's chief patent
counsel, and have begun depositions of the partners of
Permatwist.  However, Leesona the defendant has engaged
in no discovery, although much is anticipated, and at the

---

[7]  Leesona has asserted several antitrust counterclaims
in this action alleging a conspiracy among the plain-
tiffs to breach their licensing agreements and boycott
Leesona's licensing program and to induce others to
do so.  Plaintiffs are also alleged to have conspired
with the purchasers of the textured yarn by buying
machinery competing with Leesona's from sellers
designated by the yarn purchasers.

-10-

first pretrial conference before Judge Zavatt on
September 24, 1971, it was concluded that at least an
additional year of discovery was required before a
meaningful trial date could be discussed.

The Eastern District of Pennsylvania action was
brought in 1970 by Sauquoit Fibers Co. ("Sauquoit"
hereinafter), another former licensee of Leesona, against
Leesona, Permatwist and the individual partners of
Permatwist.  The complaint seeks a declaration of the
invalidity of the single heater patents and also includes
one of the double heater patents in its allegations of
patent misuse.[8]  As a second cause of action, Sauquoit
alleges that the defendants have conspired to violate
Sections 1 and 2 of the Sherman Act by their conduct
with respect to these patents.

Discovery in the Eastern District of Pennsylvania
actions has been narrowly limited to issues presented by
two motions for summary judgment.  One motion is made by
plaintiff Sauquoit for summary judgment on the issue of

---

8/   Patent No. 3,091,912.

-11-

validity of the three single heater patents.  The other
motion is as made by defendants Permatwist and its individual
partners for summary judgment on the ground that they have
assigned all their interest in the patents to Leesona.  Prior
to the filing of the Celanese action in Florida, a third
motion was filed by Leesona in the Eastern District of
Pennsylvania action requesting the transfer of Sauquoit's
claim against it to the Eastern District of New York or,
alternatively, a stay of the proceedings pending disposition
of the New York cases.  These motions have neither been fully
briefed nor submitted to the court for decision.

Two of the three actions pending in the Middle
District of North Carolina are also brought by former
licensees of Leesona, namely Texfi Industries, Inc., and
Universal Textured Yarns.  The complaints name both Leesona
and Lex-Tex as defendants and ask a declaration of the
invalidity of two of the double heater patents.[9]  Both
plaintiffs are also plaintiffs in the consolidated New York
action and, in addition, Universal Textured Yarn is the
defendant in an infringement action filed by Lex-Tex in

_____

9/  Patent Nos. 3,091,912 and 3,077,724.

-12-

Florida.  Lex-Tex has filed motions to dismiss both these actions as to it.  The third North Carolina action is brought by Leesona for infringement of one of its high speed spindle patents.[10]

The remaining six actions are pending in the Southern District of Florida, and assigned to Judge C. Clyde Atkins. Five of them were brought by Lex-Tex in 1971 against various defendants for infringement of one of the double heater patents.[11]  One of the defendants, Concordia Manufacturing Co., Inc., has interposed an antitrust counterclaim to Lex-Tex's allegations of infringement.  Two other defendants, Hialeah Knitting Mills, Inc., and Leumas Knitting Mills, Inc., have alleged the misuse and unenforceability of the double heater patent relied on by Lex-Tex.

The sixth action in the Southern District of Florida was filed in June of 1971 by Celanese and Fiber Industries, Inc.  The complaint names Leesona, Lex-Tex, Permatwist and its individual partners as defendants and seeks a declaratory judgment of the invalidity of both the single heater and

10/  Patent No. 3,044,247.

11/  Patent No. 3,091,912.

-13-

double heater patents.  However, it contains no mention of
the high speed spindle patents.  Some discovery was accom-
plished in this action before it was consolidated with the
other five actions in the Southern  District of Florida and
further discovery stayed pending the action of this Panel.
These six actions in the Southern District of Florida were
originally brought before the Panel in a motion filed by
Celanese, requesting transfer of most of these cases[12] to
the Southern District of Florida for pretrial proceedings
on issues limited to the validity of the single and double
heater patents.  The motion was later withdrawn without
explanation and an Order to Show Cause was then entered by
the Panel affecting all thirty-five actions in four districts
now under consideration.

III.  Decision on the Question Whether to Transfer

        The existence of common questions of fact in these
cases is established by the background already recited.
The recurring question of the validity of each one of the
patents in issue will present common issues of fact.  In

---

12/  See Footnote 1.

-14-

addition, there is an important factual interrelationship
between the validity of the single heater and double heater
patent groups since one (or more) of the single heater
processes is apparently the first step in the double heater
processes.  To allow the litigation to proceed independently
in more than one district on the issue of the validity of
the patents would result in repetitive discovery and a need-
less duplication of effort.  Further, under the decision of
Blonder-Tongue Laboratories, Inc. v. University of Illinois
Foundation, 402 U.S. 313 (1971), it is desirable that all
interested parties be allowed to participate in the initial
pretrial proceedings including disposition of the motions
for summary judgment on the validity issues.  And pretrial
of misuse, unenforceability and the similar antitrust
issues raised by some of the complaints, answers and counter-
claims will result in the exploration of a common factual
background concerning the alleged misuse and enforceability
of these patents.  For all these reasons, the prompt assign-
ment of the pretrial of these cases to a single judge is
desirable and necessary for the convenience of the parties
and witnesses and to assure the just and efficient conduct

-15-

of the litigation.  With some minor qualifications this
conclusion is not controverted.

The only party with differing views concerning the
need for transfer is Sauquoit.  Sauquoit requests that
transfer be deferred pending decision by the district court
on the motions for summary judgment in the Eastern District
of Pennsylvania.  Celanese favors immediate transfer but
contends the early disposition of the issue of the validity
of the single and double heater patents is the key to the
litigation, and wants to assure its expeditious determination
by excluding from the transfer or by deferring disposition
of all antitrust claims and the patent claims concerning the
high speed spindle patents.  Neither of these qualified con-
tentions are acceptable.  Although the general concept of
separate trial of patent validity and antitrust issues may
have validity in some circumstances (see, Components, Inc.
v. Western Electric Co., Inc., 318 F.Supp. 959 (S.D. Me. 1970);
Manual for  Complex and Multidistrict Litigation, §4.3 at 56),
it would be initially unwise to arrange that these factually
related issues proceed in different districts, under 28 U.S.C.
§ 1407.  The Panel's experience indicates it is best to place

-16-

all actions before a single judge who can then decide on the most expeditious manner of preparing the cases for trial.

As stated above Sauquoit requests that any initial order of transfer specifically exclude its action because of the motions for summary judgment filed therein concerning the validity of the single heater patents and Permatwist's interest in the patents.  It contends that if it prevails on these motions it will have won a victory for all plaintiffs and that if it is unsuccessful it will at least have narrowed the issues.[13]  We cannot agree to carve these vital common issues out of the litigation.  The motions pending in Pennsylvania are of significance to all parties and all parties should have the opportunity to participate in the briefing and argument so that the issues may be fully and finally determined.

_____

[13]/  At the hearing counsel for Sauquoit conceded that it was impossible to predict how long it would take to secure a decision of the motions, which are not fully briefed and have not been argued.  Even if the motions were decided for Sauquoit the possibility of appeals would further delay transfer of the case.  And in the event the patents were determined invalid by the Pennsylvania court, a further decision concerning the applicability of collateral estoppel under Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Found., 402 U.S. 313 (1971) would be required. Leaving decision of these critical motions in the Eastern District of Pennsylvania increases the probabilities of conflicting decisions at the district and appellate court levels of that district and circuit and of the transferee district and circuit.

-17-

We have concluded that there should be an immediate transfer under § 1407 to a single transferee district to make possible consolidated or coordinated pretrial proceedings in the transferee district.

## IV. Decision on Selection of the Transferee District

The real dispute between the parties to this litigation concerns the selection of a transferee district. Leesona, Lex-Tex, Permatwist and its individual partners, along with plaintiffs Celanese and Fiber Industries, favor the Southern District of Florida. The New York plaintiffs, Sauquoit Fibers and the remaining parties urge selection of the Eastern District of New York.

The parties are agreed on the importance of placing these cases in a pretrial posture which will also make possible a decisive trial of the principal common issues in a single district. We have often stated that Sections 1404(a) and 1407 may be used together to achieve the just and efficient processing of litigation.[14]

---

14/ "Sections 1404(a), 1406(a), and 1407 are not mutually exclusive and, when appropriate, should be used in concert to effect the most expeditious disposition of multidistrict litigation." In re Koratron Patent Litigation, 302 F.Supp. 238, 242 (J.P.M.L. 1969); see, In re Grain Shipment Litigation, 300 F.Supp. 1402 (J.P.M.L.); In re Silver Bridge Disaster Litigation, 311 F.Supp. 1345 (J.P.M.L.)

-18-

When a determination under Section 1404(a) has preceded the
Panel's decision under Section 1407, we have shown deference
to the district court decision.  In re Master Key Antitrust
Litigation, 320 F.Supp. 1404 (J.P.M.L. 1971).  And when, as
here, our decision precedes some potential transfers under
Section 1404(a), we believe it our duty to select the transferee
district best able to serve as trial forum as well.

We are convinced that of the two proposed districts,
the Southern District of Florida is better suited to pretrial
and ultimate trial of the principal issues involved in the
litigation.[15]  Our summary of the underlying facts of this
litigation indicates the importance of having Lex-Tex present
as a party in order to secure a conclusive determination of

---

15/  It may be that certain of the actions, particularly Leesona
Corp. v. Duplan Corp., E.D.N.Y., Civil Action No. 70-C-1087
and Leesona Corp. v. Custom Industries, Inc., M.D.N.C., Civil
Action C-236-G-70, are not transferable to Florida under
28 U.S.C. §1404(a).  Nevertheless, all issues raised in
these suits, as well as many of the parties, are present
in other actions and can be conclusively determined by
pretrial and trial in Florida.  The New York plaintiffs
also argue that Permatwist and its partners may not be
subject to the jurisdiction of the Florida court and note
that these defendants have motions to dismiss pending in
the Celanese action.  They fail to explain how this problem
would be obviated by transfer to New York, however, and we
must conclude that the possible dismissal of these defendants
is a risk present in both proposed transferee districts.

-19-

all common issues.  Lex-Tex is owner of all three double heater
patents and is an alleged conspirator with Leesona and others
to misuse and exploit these and other patents in a manner
violative of the antitrust laws.  In spite of its obvious
importance as a necessary party to litigation finally dis-
posing of the double heater patents, Lex-Tex has not been
named a defendant in the Eastern District of New York.  The
briefs and arguments of the parties have created grave doubt
whether it can be made a party defendant in that district for
purposes of trial.  Counsel for the New York plaintiffs
conceded at the hearing that Lex-Tex was not named in the
amended complaint because the plaintiffs initially doubted
whether it could be sued there.  And although they contend
their doubts have lessened, they assert that several additional
months of discovery is necessary before they can decide whether
to add Lex-Tex as a defendant in New York.  In the meantime
discovery material to this question, conducted in litigation
to which Lex-Tex is not a party is not usable against it.  No
such problem is presented in Florida, where Lex-Tex is
incorporated and maintains its only office.

Transfer to Florida will be both for the convenience

-20-

of parties and witnesses and the just and efficient conduct
of the litigation.  Although other districts may be more
convenient to particular parties and witnesses, the transfer
of this litigation to a single district for pretrial and trial
of a substantial number of actions triable there is of such
importance that it outweighs  such minor inconveniences.  The
discovery completed in other districts will not be lost by
the transfer to Florida, as the New York plaintiffs concede,
and it seems clear that a great part of discovery remains to
be completed.

        Finally, we reject the argument of the New York
plaintiffs that the earlier transfer under § 1404(a) of the
Rhode Island case to New York supports transfer of all actions
to that district.  In reaching its decision, the Rhode Island
court gave considerable weight to the objective of securing
a single adjudication of the issues raised by the actions
then pending.  It concluded that while the issues of the
licensees' patent infringement and Leesona's antitrust viola-
tions could not be decided in Rhode Island, all issues could
be determined in New York.  Leesona Corp. v. Duplan  Corp.,
317 F.Supp. 290, 300-301 (D.R.I. 1970).  The decision to

-21-

transfer to New York, however, was reached before the Lex-Tex double heater patents were injected into this litigation. After the transfer to the Eastern District of New York of the Rhode Island cases, the New York plaintiffs filed their amended consolidated complaint naming Lex-Tex as a conspirator with Leesona in violating the antitrust laws, and the Florida actions concerning the double heater patents were filed. Because of these changed circumstances and because of the obvious interrelationship between the single and double heater patents, we think the decision of the Rhode Island court made before developments now before us can be given little weight in reaching our decision.  In the present circumstances, the same considerations which lead the Rhode Island court to select New York as transferee forum compel us to select the Southern District of Florida.

In summary we conclude that the following considerations warrant the selection of the Southern District of Florida as the transferee district over the Eastern District of New York:

      1.  It is apparent that a speedy fully controlling determination of the validity and enforceability of each of the three single heater

-22-

and three double heater patents, at least,
is necessary and desirable.  Because Lex-Tex,
owner of the double heater patents, is a
party in the Southern District of Florida
and was not at the time of submission a
party in the Eastern District of New York,
there is no assurance that there could be
a binding adjudication of the validity and
enforceability of the double heater patents
in actions triable in the Eastern District
of New York.  To say the least it is admit-
tedly doubtful that Lex-Tex can ever be made
a party defendant in the Eastern District of
New York.  Further, in failing to include all
issues and all necessary parties in their
cases, New York plaintiffs have failed to
qualify as "early comers" to the litigation,
if indeed being an "early comer" is a criterion
for selection of the transferee district.

2.  In the absence of Lex-Tex as a party defendant
in the Eastern District of New York it is not
presently possible to schedule speedy pretrial
and trial of the validity and enforceability
issues of the interrelated double heater and
single heater patents in the Eastern District
of New York.  No one denies that the efficiency
of the pretrial and early trial of all issues
before a single judge and a decision binding
on as many parties as possible is necessary
in the interests of justice.  See, e.g.,
Butterfield v. Oculus Contact Lens Co.,
332 F. Supp. 750 (N.D. Ill. 1971).[16]  This is
currently possible only in the Southern District
of Florida.

3.  Because of the doctrine of collateral estoppel
applicable in patent validity actions (under
Blonder-Tongue Laboratories, Inc. v. University
of Illinois Foundation, 402 U.S. 313 (1971)),
it is peculiarly desirable that in such multi-
district patent litigation the transfer under

---

16/  In the cited opinion, Judge Hubert Will, transferee
judge in the Butterfield Patent Litigation, 328
F. Supp. 504 (J.P.M.L. 1968), determined the issues
of validity, estoppel and marking in all cases where
defendants were either located in the transferee
district or consented to trial there.

-23-

§ 1407 for pretrial proceedings be made to
a district in which full pretrial and trial
of the single and double heater patent issues
can be completed and final judgment can be
entered in a reasonable time, thereby con-
cluding all issues and all patent owners if
the patent is found invalid.  Only in the
Southern District of Florida can we say with
assurance that this can be done.

4.  Secondarily involved are the three high speed
spindle patents, which some processors use.
These patents are owned by Leesona, which is
a party in the actions in the Eastern District
of New York and the Southern District of
Florida (as Leesona is also suable in the
Southern District of Florida).  If it is
desirable to include the high speed spindle
patents in the priority schedule for pretrial
and trial in the Southern District of Florida,
there are many ways in which this can be done
with or without the approval of the transferee
judge.

5.  All relevant discovery on the common issues
of fact heretofore had by plaintiffs in any
cases in the Eastern District of New York can
be readily made usable (even in respect to
Lex-Tex) in all the actions by appropriate
pretrial orders.  Nothing discovered need be
forfeited or lost, and no one will be penalized.
In this connection, it is noted that defendants
in those actions have reserved their privileges
to make discovery and have made none.

6.  We see nothing sinister in the fact that Celanese
filed its action after unsuccessfully seeking
to negotiate a license agreement.  Nor do we
see anything sinister in its bringing its action
in the only jurisdiction, of those under con-
sideration, in which it could establish without
serious doubt jurisdiction and venue in respect
to the owners of the single heater, double
heater and the high speed spindle patents.

-24-

IT IS THEREFORE ORDERED that all actions on the attached Schedule A (other than those now pending in the Southern District of Florida) be, and hereby are, transferred to the Southern District of Florida and, with the consent of that court, are assigned to the Honorable C. Clyde Atkins for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

SCHEDULE A                                        DOCKET NO. 82

SOUTHERN DISTRICT OF FLORIDA

Celanese Corp., et al. v. Leesona Corp., et al.      Civil Action
                                                     No. 71-1026-Civ-CA

Lex-Tex, Ltd., Inc. v. Universal Textured Yarns,     Civil Action
Inc., et al.                                         No. 71-83-Civ-CA

Lex-Tex, Ltd., Inc. v. Concordia Manufacturing       Civil Action
Co., Inc., et al.                                    No. 71-84-Civ-CA

Lex-Tex, Ltd., Inc. v. Hialeah Knitting Mills,       Civil Action
Inc.                                                 No. 71-385-Civ-CA

Lex-Tex, Ltd., Inc. v. Leumas Knitting               Civil Action
                                                     No. 71-387-Civ-CA

Lex-Tex, Ltd., Inc. v. Universal Knitting            Civil Action
Mills, Inc.                                          No. 71-386-Civ-CA

MIDDLE DISTRICT OF NORTH CAROLINA

Universal Textured Yarns, Inc. v. Lex-Tex, Ltd.,     Civil Action
Inc., et al.                                         No. C-38-G-71

Texfi Industries, Inc. v. Lex-Tex, Ltd., Inc.,       Civil Action
et al.                                               No. C-73-G-71

Leesona Corp. v. Custom Industries, Inc., et al.     Civil Action
                                                     No. C-236-G-70

EASTERN DISTRICT OF PENNSYLVANIA

Saquoit Fibers Co. v. Leesona Corp., et al.          Civil Action
                                                     No. 70-1728

EASTERN DISTRICT OF NEW YORK

Kayser-Roth Corp. v. Leesona Corp., et al. (*)       Civil Action
                                                     No. 69-C-1084

Leesona Corp. v. Duplan Corp., et al.                Civil Action
                                                     No. 70-C-1087

(*)  Master case for 24 consolidated actions.

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

MAR 22 1972

PATRICIA D. HOWARD
CLERK OF THE PANEL

IN RE YARN PROCESSING PATENT     )
VALIDITY LITIGATION              )        DOCKET NO. 82

3/22/72
Dissent

DISSENTING OPINION

BEFORE ALFRED P. MURRAH, CHAIRMAN, AND JOHN MINOR WISDOM,
EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH
S. LORD, III, AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

JUDGE EDWARD WEINFELD, with whom JUDGES JOHN MINOR WISDOM
AND STANLEY A. WEIGEL join, dissenting:

Various actions pending in four district courts are

before the Panel on its order to show cause why they should

not be transferred to a single district for coordinated or

consolidated pretrial purposes.[1]  In all, there are thirty-five

actions pending in four districts -- twenty-five in the Eastern

District of New York, one in the Eastern District of Pennsylvania,

three in the Middle District of North Carolina, and six in the

Southern District of Florida.  The actions revolve about patents

used in the processing of synthetic yarn and the manufacturing

of machines for that purpose, and described as (1) the single

_____

[1]  Previously, Celanese Corporation (Celanese) and Fiber
Industries, Inc., plaintiffs in a Florida action, moved
for an order under 28 U.S.C. §1407 (except in an action
pending in Rhode Island and one pending in North Carolina),
but for reasons which do not appear withdrew their motion,
following which the Panel issued the instant order to show
cause.

- 2 -

heater patents,[2] (2) the double heater patents,[3] and (3) the spindle patents, related to false twist spindles and spindle drives for false twisting machinery (the Hilbert patents).[4] The patents are generally referred to as the "false twist" patents. False twisting is the most widely used method of texturizing yarn by means of thermal processing.

The issues in the various lawsuits include validity of the patents, infringement, patent misuse and antitrust violations. The actions, with related and assorted claims and counterclaims, present a classic case for transfer under section 1407(a). Indeed, all the contending litigants appear in agreement that the actions should be transferred for coordinated pretrial purposes, but disagree as to the district of transfer, and also as to whether the transfers should encompass all claims and counterclaims.

I agree with the majority determination that all claims and counterclaims should be transferred to a single district for coordinated or consolidated pretrial proceedings; however, I dissent from the transfer of the cases to the Southern District of Florida, where suits were filed only this year, instead of to the Eastern District of New York, where

---

[2] Consisting of 3 patents, Nos. 2,803,105; 2,803,108; 2,803,109, which expire in 1974.

[3] These consist of 3 double heater patents, Nos. 3,077,724; 3,091,912; 3,472,011, which remain in force, expiring in ten to fifteen more years.

[4] Patent Nos. 2,791,086; 3,044,247; 3,134,218.

- 3 -

actions have been pending since 1969 and pretrial discovery
and procedure has been carried on in substantial degree.   In
my view, transfer to Florida of the actions penalizes diligent
litigants, rewards the latecomer, runs counter to the command
of the statute that the transfers shall be "for the convenience
of the parties and witnesses," and defeats rather than
"promote[s] the just and efficient conduct of such actions."

### The Parties

The parties to the various litigations include
Leesona Corporation (Leesona), the owner of the single heater
and spindle patents, and alleged by a number of litigants  to
be the sole manufacturer in the United States of false twisting
machinery; Permatwist Company (Permatwist), a partnership
composed of original patent owners who reserved certain con-
trols under the single heater and double heater patents and
allegedly share in royalties received under Leesona's licensing
program; Lex-Tex, Ltd., Inc. (Lex-Tex), a North Carolina
corporation, subsequently incorporated in Florida under the
same name and alleged to be a related or affiliated corporation
of Leesona, from which it acquired title to the double heater
patents; Celanese Corporation (Celanese), the most recent
litigant, which seeks a declaratory judgment of invalidity
of the false twist patents; licensees, processors of yarn,
and others who instituted the first lawsuits attacking the

- 4 -

validity of the patents and charge the patent owners and others with a continuing antitrust conspiracy and misuse of patents.

## THE VARIOUS ACTIONS

1. Eastern District of New York
   (New York actions)

These are the earliest, the first having been commenced by a licensee against Leesona in August 1969.  In all, there are twenty-four actions, which have been consolidated.  A number of plaintiffs in the twenty-four consolidated actions were named as defendants in the remaining action commenced by Leesona in the District Court of Rhode Island, and transferred to New York, pursuant to section 1404(a) of Title 28.[5/]  The New York plaintiffs, formerly licensees under Leesona's false twisting licensing program, assert various claims against Leesona with respect to the patents, including invalidity, misuse, an  antitrust conspiracy with other alleged conspirators, including Lex-Tex, plaintiff in five of the Florida actions, which actions are charged to be part of the continuing conspiracy. In essence, the plaintiffs in the New York actions seek a declaratory judgment declaring the patents invalid; also a judgment of non-infringement and unenforceability of the single heater and spindle patents, as well as relief under the Sherman Act.  Leesona has counterclaimed, charging  plaintiffs with

---

[5/]  *Leesona Corp. v. Duplan*, 317 F. Supp. 290 (D. Rhode Island, 1970).

- 5 -

a conspiracy among themselves, and to induce others, to breach their licensing agreements and to boycott Leesona's licensing program.  Upon this record, there can be no question that with respect to the various issues presented in the different actions, the New York cases are the most advanced.

2.   Eastern District of Pennsylvania

This action was commenced in June 1970, by Sauquoit Fibers Co., a licensee, against Leesona, for a declaratory judgment that the single heater process is invalid.  The complaint also contains charges of misuse, including the double heater patents, and antitrust violations by Leesona and Permatwist and its partners.

Plaintiff has moved for summary judgment declaring the single heater patents invalid and Permatwist and the individual defendants have moved for partial summary judgment on the ground that they they no longer own the patents but the motions have not been argued.  These, of course, can be heard and disposed of by the transferee judge.

3.   Middle District of North Carolina

Three actions were commenced, the earliest in October 1970.  Two plaintiffs (Universal Textured Yarns and Texfi Industries), licensees, have named Lex-Tex and Leesona as defendants and seek a declaratory judgment of the unenforceability of the Lex-Tex-Leesona licensing program and invalidity

- 6 -

of the double heater patents.  The two plaintiffs are also plaintiffs in the New York consolidated actions against Leesona, and one (Universal Textured Yarns) is named as a defendant in an action commenced by Lex-Tex in the Southern District of Florida.  The third action in this district was commenced by Leesona against Customs Industries Inc. for alleged infringement of one of the spindle patents.

  4.  Southern District of Florida

  Six actions were commenced in this district, and in point of time they are the latest filed -- from January 21 to June 1971.  The last action was filed on June 28, 1971 by Celanese Corporation and Fiber Industries, Inc. against Leesona and Lex-Tex, and seeks a declaratory judgment of invalidity of the six single heater and double heater patents.

  The other five actions were commenced by Lex-Tex Ltd., a Florida corporation6/ and assignee of Leesona patents, and charge various defendants (some plaintiffs in the New York action; one, as already noted, a plaintiff in an action in North Carolina), with infringement of one of the double heater patents.  A defendant in one of those actions has interposed an antitrust counterclaim against Lex-Tex and others have asserted the unenforceability of the patent because of misuse by Lex-Tex.  All the cases have been assigned to one judge.

_6/_ It is alleged Lex-Tex was originally incorporated in North
  Carolina, but later moved to Florida and there incorporated,
  allegedly because the climate there was considered more
  receptive for favorable adjudication of patents.  Affidavit
  of Phillips, p. 10

Celanese, the latest entry in the controversies, joined
Leesona and Lex-Tex in asking that all actions be transferred to
Florida, but sought to limit the transfer to the single and
double heater claims, and urged upon the Panel that the spindle
patent claims and their related issues, as well as the antitrust
claims be severed and transferred to another district, presumably
New York.

Apparently there is more than meets the eye in
Celanese's filing of its action in Florida for a declaratory
judgment of invalidity, in close proximity to the filing by
Lex-Tex of its actions in that district.  The New York
plaintiffs, the licensees, have charged that the suit was
filed only after Celanese, Leesona and Lex-Tex[7] unsuccessfully
sought to conclude an agreement which would have given Celanese
a lower and discriminatory royalty rate than that granted to
other licensees, and that the suit by Celanese and those by
Lex-Tex in Florida are in fact in furtherance of a purpose
to benefit Celanese at the expense of other licensees.  Whether
these claims are of substance or groundless, I am of the view
that Celanese should not at this late hour be permitted to
interrupt the orderly procedures which have gone forward in
the New York actions for over two years.  Whatever the merits

---

[7]  The doubt  referred to by the majority that Lex-Tex, named
as a conspirator in the New York actions, can be made a
party-defendant in that district for purposes of trial is
beside the point.  Whether plaintiffs succeed or not in
subjecting Lex-Tex to jurisdiction there, a transfer under
Section 1407(a)  of the Florida actions to New York will
permit the depositions in all actions to proceed apace, no
matter where the cases are eventually tried.

- 8 -

of Celanese's position with respect to the patent it challenges, these can be readily advanced by participating in the current procedures in the consolidated New York claims.

I am persuaded a compelling case has been made that judicial economy, efficiency of administration and expeditious resolution of the issues presented by these litigations will most readily be achieved by a transfer to the Eastern District of New York, and that such a disposition will most effectively and speedily terminate these complex and complicated litiga- tions.  That district is the most convenient for the witnesses, parties and counsel.

The deposition and discovery process has moved forward there with dispatch.  A comprehensive plan for consolidated discovery of the patent and antitrust issues was there developed under the guidance of District Judge John F. Dooling, to whom the cases were originally assigned for all purposes.[8/]  To date, the plaintiffs, initially under his supervision and later that of former Chief Judge Zavatt, have gone forward with the pretrial procedures on a broad front encompassing all issues.  All parties can benefit from discovery thus far had in the consolidated New York actions.

The discovery process has to date resulted in the production of a massive volume of material and documents, all stored in New York, and the transfer of them from New York to

---

[8/]  Judge Dooling later found it necessary to disqualify himself.

- 9 -

Florida would impose an undue and unwarranted burden upon
diligent litigants.  Plaintiffs already have examined over
200,000 documents, including 300,000 pages, have copied 130,000
for use on the trial, have spent 250 man days in discovery and
examination, and have taken more than 3,000 pages of testimony
of witnesses, with examinations still in progress.  The deposi-
tion of Leesona's chief patent counsel alone consumed twenty-four
full day sessions in New York, and resulted in 2500 pages of
testimony, and is not yet completed.  Depositions of three
Permatwist partners have taken another fourteen days, with one
deposition completed and those of two other witnesses scheduled
for this past month, and may be in progress or have been com-
pleted at this writing.  Chief Judge Zavatt has indicated he
is ready and available to try the case whenever the parties
have completed their pretrial discovery proceedings.  A study
of the voluminous record here presented fully bears out the
statement of an attorney on the Steering Committee in the New
York consolidated actions made before this Panel that he had
"never seen a case that would constitute a model for multidistrict
litigation or complex litigation that has moved along as effectively
and as efficiently as the case in New York."[9]/

In contrast, in the Florida action so recently filed,
there has been comparatively little discovery, particularly so

[9]/ Hearing of Judicial Panel on Multidistrict Litigation, Oct. 29,
1971, p. 59

- 10 -

since dismissal was sought of the Celanese action by one
defendant for improper service, lack of jurisdiction and
improper venue, and also because stays of proposed depositions
were granted.  To date, document discovery has been meager
and limited to a handful of documents located in the Lex-Tex
office there, and depositions have only been scheduled but
none taken.  There is testimony that the total Lex-Tex files
in its Florida office consist of one 12-inch drawer of a filing
cabinet, only half of which is current, and obviously can be
moved with slight, if any, inconvenience.  Leesona maintains
records pertaining to its six owned patents in Rhode Island,
its principal place of business, and other records pertaining
to patents in question are located at Permatwist's office in
Philadelphia, and still other records are in New York.  Leesona
and Lex-Tex have failed to make any showing that any relevant
records are in Florida.

It is of some significance that Leesona's action
against sixty licensees, commenced in Rhode Island the principal
place of business of Leesona, was, on a section 1404(a) motion,
transferred to the New York district.[10/] Also of significance is

<hr>

[10/] In all, the claims against 30 defendants were transferred to
the Eastern District of New York; the others, which were not trans-
ferable under <u>Hoffman v. Blaski</u>, 363 U. S. 335 (1960) were severed
and stayed.  <u>See Leesona Corp. v. Duplan Corp.</u>, 317 F. Supp. 290,
300 (D.R.I. 1970).

- 11 -

that Leesona, in the Pennsylvania suit, moved to transfer
that action under Section 1404(a) to the New York district;[11]/
further, that a number of Leesona's licensing agreements, no
matter where entered into and regardless of where the licensees
or Leesona do business provide that disputes thereunder are
to be conducted in New York.  These factors strongly militate
against Leeson's plea for transfer to Florida -- if New York
is a convenient district for Leesona for arbitration regardless
of where the other disputants are located and also for a Section
1404(a) transfer, it certainly is convenient for pretrial purposes
of these actions.

        The convenience of all litigants and witnesses dic-
tates New York as the proper transferee district.  The record
here gives support to the licensees' charge that Lex-Tex Ltd.,
a Florida corporation, is a nominal corporation, organized as
a conduit to receive royalty payments; that it performs no sub-
stantial business of any kind in Florida; that its sole stock-
holders are two attorneys, one a resident of Washington, D.C.,
who represents Leesona in this litigation, and the other, general
counsel to Permatwist, who resides in Philadelphia, Pennsylvania.
With the exception of an attorney in Florida who is a nominal

--------

[11]/  I am not unaware of Leesona's contention that the motion was
made before the Florida suits were commenced, but this circumstance
does not down the basic facts upon which it applied for the transfer
"for the convenience of parties and witnesses in the interests of
justice . . . ."

- 12 -

president and employee of Lex-Tex, no other person in Florida
has knowledge of the basic facts upon which the various suits
are grounded.  Surely there is no basis for any rational claim
that as to these attorneys Florida is a more convenient forum
than New York.  And any other persons, directors and officers
of Lex-Tex having knowledge of the relevant facts are located
or reside at places far more accessible and convenient to New
York than to Florida.

As to Celanese, New York is the natural and most
convenient district for transferee purposes.  It maintains
its principal place of business there; its house patent counsel,
who are "of counsel" in the Florida action, are located in New
York City, and Celanese and Fiber Industries trial counsel are
located in Washington, D.C.  Celanese conducts no yarn process-
ing activities in Florida, and no New York plaintiff conducts
yarn processing there.  While the Florida plaintiffs asserted
"many retired persons formerly employed by various parties
(including Celanese) . . . now reside in the Southern District
of Florida and are 'likely witnesses,'" with the single exception
of one of the patentees who allegedly resides in Florida, whether
as a permanent resident or transient vacationer is not stated,
neither the names of the purported witnesses nor the nature of
their testimony is stated.[12]/

---

[12]/  Cf. Oil & Gas Ventures - First 1958 Fund Ltd. v. Kung, 250 F.
Supp. 744, 756-57 (S.D.N.Y. 1966); Strypek v. Schreyer, 118 F. Supp.
918 (S.D.N.Y. 1954).

- 13 -

The New York plaintiffs either have their principal place of business in New York, or transact business or maintain offices there, and the majority there keep records relevant to the litigation.  Most of the attorneys representing these litigants maintain offices there.  These twenty-four plaintiffs are represented in the consolidated action by a Steering Committee of attorneys with offices in New York, Washington, D.C., and Greensboro, North Carolina.  These attorneys, although widely separated, have functioned effectively as a team, have actively participated in the pretrial deposition discovery procedure in the New York district, and find it most convenient.  Thus, in terms of actual experience extending over a two-year period, that district has been a satisfactory forum for the efficient conduct of the litigation.  All parties, whatever the issues in their respective cases, have much to gain by a transfer to that district, and much to lose by a transfer elsewhere.

Surely we have an interest in avoiding repetitious and duplicative discovery.[13/]  With discovery in the most advanced state in the New York actions, and hardly off the ground in other districts, in the words of this Panel, "Judge [Zavatt's] familiarity with this litigation compels the selection of the District of [Eastern New York] as the only practical transferee forum at this time."[14/]   The transfer should be to that district.

13/   Cf.  In re Frost Patent, 316 F. Supp. 977, 979 (J.P.M.L. 1970); In re Gypsum Wallboard, 303 F. Supp. 510 (J.P.M.L. 1969).
14/   In re Frost Patent, 316 F. Supp. 977, 978 (J.P.M.L. 1970).